Police Court. My name's David Reed here on behalf of Glenn Quantz. Here with me is co-counsel JD Smith and Mr. Quantz at the end of the table. At its essence, your honor, oh I'm sorry I'd like to reserve five minutes. At its essence, your honor, this when he was 19 or 20 years old, participated in a theft of tires. When he applied for employment with the Thurston County Sheriff's Office in 1986, he, on convicted of a felony. When he was 19, he was arrested for a felony, but during the course of the negotiations with the prosecuting attorney, plea bargained that felony to a misdemeanor and was sentenced to 10 days in jail and one year probation, one year of probation and with a deferred one-year sentence. When, at the end of the one-year probation, Mr. Quantz went to the judge, changed his plea to not guilty and the judge dismissed the case. In 1987, Mr. drew his application in 1986 and in 1987 reapplied for a position with Thurston County Sheriff's Office. In the background information part of the application, he indicated that he was arrested for the theft of the tires and that he had received probation. He wasn't sure how long the probation was, but he did indicate that he had received probation. When he filled out the information, he put question marks on the application to indicate that if a person had a question about it, they could ask him and he could clarify that. During the polygraph that he took as part of the application, he also had indicated that the tire incident occurred and that and he disclosed the probation and and that the tire incident had happened. In our brief, we objected or we asserted that the trial court erred in granting the defendant's motion for summary judgment and pointed out reasons why the court erred. And initially, the court erred in refusing to apply that 1983 action to the other deputies that were involved with regard to denying Mr. Quantz's constitutional right to Your basic complaint on this part of your case is that the sheriff instituted proceedings, postponed the proceedings, and then told the public after there were newspaper articles that that's what he had done. Correct. And this was during a public election campaign. Correct. And your allegation is that that's a violation of the plaintiff's constitutional rights. That's correct, Your Honor. And in fact- That's not the way the jury was instructed. That was not the theory that went to the jury. It was the delay. I'm sorry, I thought that- Yeah, I did. That was in the question. It was instituting, delaying, and telling the public. Correct. But Judge Pryor says that when it went to the jury, it was on the delay. It was on both the delay and then the announcement. Well, in the instruction that went to the jury, it just talks about delay. There was a- Here's- I'll admit I'm a little bit confused about your argument here today, or in the briefs, I should say, I guess. As I looked at what happened in the district court and the way the case was framed for the jury and the way the judge limited the case, he said it's the delay in following through on the investigation, postponing until after the election, was the adverse employment action. And then evidence comes out at the trial about the announcement. And the way that that was looked at is that was evidence. The announcement wasn't relied upon as the constitutional harm to the jury. It was simply used as evidence and support for the adverse action. That's the way I understood the case to be framed. In the- that's regarding the trial itself. Well, what happened here is that you're up here- unless you're- I don't quite understand what you want us to do with the summary judgment, at least as to this part of the case. Well, what we're asking is that the court find that the constitutional violation applied to each of the defendants in the case. But the violation is what? The delay or the announcement or the institutional proceedings or all three? I- I- you know, I must say any of the three, I guess- I don't know what it's like in your county, but I've been through a lot of election campaigns. And we just had one with the swift boats. You know, politics is a little dirty. What's the constitutional violation in your mind? Well, here, the constitutional violation, and it's consistent with what the court found on its motion for summary judgment, was the delay coupled with the announcement to the public that the defendant was- or that the plaintiff was under investigation. Well, as I understand it, there were newspaper articles about this problem or non-problem. It doesn't take much, you know, for the newspapers to report on a candidate. And it's not necessarily accurate, and it's not necessarily fair. And the way you describe the facts, this is maybe neither accurate nor fair to your client. But if it's publicly reported, is it a- is it a violation for the head of the department to say this is what we're doing about it? Announcing it in and of itself isn't the violation. Announcing the investigation or conducting the investigation in and of itself isn't the violation. The violation was announcing it and also delaying it so that even with regard to the public announcement in the newspapers, you have this negative campaigning without allowing the plaintiff to cure the air or to clear his name. Another aspect of this, when they finally did it afterwards, they hired an independent investigator to come in. I don't know why, but it took- how long did it take for that- It took three months for the investigation to take place. However, during the course of that investigation, the investigator had to take time off for personal reasons. Yeah. It's hard to understand what would have taken so long about this investigation. But is there anything unconstitutional about saying, you know, we- there have been these charges, but we don't in the middle of an election campaign want to conduct the investigation and make a report? It might even seem as if you wouldn't get a fair investigation during the campaign, and it'd certainly be an incentive for the opponent to want to come out with a report that would be adverse. Is there something- I mean, I can see arguments on both sides of whether you would want the investigation to take place during the campaign. But is it unconstitutional to wait until after the election to come out with an investigation that might say your client did do something wrong? No. The delay in and of itself was not the act that was considered unconstitutional. It's the delay coupled with the announcement by the sheriff that his opponents were under investigation. Well, you know, I can see all kinds of criticism of the sheriff for announcing in a public meeting, all my opponents are under investigation, they're all no good. You know, I can see a lot of criticisms that could be made of that. Just as I said, you know, with the swift boats, you take a hero and turn him into the villain. You know, that may not be nice campaigning, but even when done by the head of the department, it's hard for me to see a constitutional violation. Well, the protected speech in this case was the announcement that Mr. Cross was running for office. Yeah. Well, when you run for office, you can expect your opponent to be not too nice to you. Correct. And even to smear you. That's part of the process in our election system. You know, it's and that's part of free speech. But, you know, I can certainly understand the reason to be find this improper conduct, which. But the question of a constitutional vote. Well, we have your briefs on it. We're certainly going to consider it. But you've got another count, too, which is what we used to call freeway justice in Los Angeles. When the sheriff didn't like what a subordinate was doing or if he opposed to anything, the. The deputies to find themselves out three hours away from where he lived. And that's where he got transferred to. So that kind of transfer, I think we may be somewhat familiar with at least maybe not in Nebraska. But those of us in Los Angeles at least understand that. So why don't you tell us a little bit about that problem? That part involves reassignment of Mr. Quench to the sexual offender registration program. And in our case, we indicated that his supervisor, together with the other defendants. Reassigned him in retaliation for him running against the sheriff. And how soon after the election was over was the reassignment? It was in the in the following month. And is there evidence that the client had made it clear in the department that that was something that he found undesirable? Captain Kimball himself indicated that assignment to the sexual assault unit was undesirable. And in fact. It was just an undesirable assignment or particularly for your client? Both. Because B. Captain Kimball indicated that he was in his deposition indicated that he was aware. And at the trial was aware of other officers who had who did not want to work in the sexual assault unit. And was he aware that your client particularly did not want to work there? Yes. Because, in fact, it was Captain Kimball who allowed our client years earlier to leave the sexual offender registration program. When he went to Captain Kimball and told him that he could not take being in the in the program any longer or in the department any longer. Do you want to save? You've got four and a half minutes left. Thank you. Good morning. May it please the court. I'm Dale camera from Olympia. I represent the appellees who were the defendants before the district court. This is a case where the evidence on all the issues was insufficient. Much of that evidence offered by the plaintiff was irrelevant. And a great deal of the evidence was inadmissible because it was. So, you know, nonetheless, the judge let it go to the jury and the jury returned a verdict for you. Judge Brian was extremely generous in letting the plaintiffs to get past summary judgment. Something here. The thinnest of evidence. There was something there that moved the jurors. We think we were confused, Your Honor. Frankly, as we pointed out in our brief during the course of the trial, there were so many objections that were sustained to the to the questions of witnesses by the plaintiff's attorney that a jury couldn't help to be confused about what was the evidence in this case. The only evidence that they had, the only issue they had that went to the jury, was this question of whether delay of an investigation that the plaintiff himself admitted was warranted, given the evidence of his past criminal activity and the strange way in which he referred to that in his employment application. Basically, he said he was the unwitting possessor of stolen wheels and tires when, in fact, he had participated directly in removing four or six wheels and tires from two vehicles. I just want to clarify one thing and just make sure. As I read the jury instructions that were given to the jurors, the only theory that was presented to the jury was this delay theory. Correct. Yes. It wasn't even, the theory was not even a link, delay plus intentionally delaying, knowing that he would reveal during the course of the campaign. Correct. And that's because the investigation was underway. Once it came to light that there were these issues, and the issue was not whether Quance had committed crimes at age 20, it was whether his application for employment with the sheriff's office had falsely stated his background. That was what undersheriff Neal McClanahan, not Sheriff Edwards, because McClanahan was the personnel director of the office. He decided immediately upon learning this information that this was an investigation that could not occur during an election campaign where Quance was a candidate. Is it correct that on the applications there were question marks next to these questions? I believe there were. They were clearly understood as questions because they were answered as questions. But there was no misrepresentation. There arguably was misrepresentation because of what he said about essentially being the unwitting possessor of stolen tires that turned out to be stolen when, in fact, he turned the lug nuts on the wheels to take the tires and wheels off the vehicles. And furthermore, he said he had, he got probation. In fact, he pled guilty, received a jail sentence plus probation and was required to make restitution. So there was a lot more to the story that he soft-peddled in the application. But that was the issue. That was valid, as the plaintiff admitted, to investigate. And the court instructed the jury that that was a valid investigation. The only question was the choice between delay or conducting that investigation immediately. Let me ask you another question. Do you think it was okay for the jury to infer? The evidence did come out that at this Kiwanis event, the sheriff, I guess the sheriff, as I understood the sheriff's testimony, that in response to some questions from the audience, he revealed or made known that there was an investigation. No, it was not correct to infer that, Your Honor, because. So the inference I'm asking, could the jury infer from that announcement that the decision to delay was all sort of a strategy that was underway? The jury didn't know, or excuse me, the public did not know that there had been a delay in an investigation. They didn't know that there would be an investigation. That was all in the mind of under Sheriff Neil McClanahan and Sheriff Edwards because McClanahan said, I'm going to delay this investigation and use an outside agency, and Edwards says, okay. He concurred in that decision. That was it. Then two months later there before the Kiwanis, there had been a newspaper article, and the newspaper got this information from its own sources, including the plaintiff himself. They got the information that he had this criminal background, and there may be questions about his employment application. They did not learn that information from the sheriff. They did not learn that there was going to be at some time in the future an internal investigation. They did not, and the statement that is alleged to have been made by Sheriff Edwards at the Kiwanis event was, these men are under investigation. And Sheriff Edwards said what he meant, he didn't say this to the Kiwanians, he said what he meant by that is these candidates, like all candidates, are under investigation. Well, that's pretty unbelievable. Well, there had been these newspaper articles, Your Honor. The articles were out there in the public, and they were saying there are these questions about Kiwanis. So Edwards did not say he's under investigation. Was the sheriff under investigation from the voters also? As a candidate, certainly. So did he tell them they're under investigation just the way I am? He didn't say that, allegedly. What he said is these two opponents of mine are under investigation. So what you're saying is that what he didn't say was he's under investigation and we've delayed the investigation until after the election. He did not connect any investigation to the sheriff's office. He didn't say Quantz was a criminal, Quantz had falsified his employment application, and we're going to investigate him when this election campaign is over. None of those things were said. Not only were these things not said to the Kiwanis, they were never said by the sheriff to anyone, the news media or anyone other than talking to Under Sheriff McClanahan about this. So what you have is a huge vacuum around this statement at the Kiwanis meeting. It was out there. It was evidence that the district court correctly understood that this was not under color of law. What was the question that elicited that answer, that these men are under investigation? No one could remember, and no one testified to what the question was. It was just an open forum before this group of citizens where all three candidates were present, and somehow the sheriff was prompted to say something about investigation. And he said something close to what was alleged, but what he meant was candidates are under investigation. But the other candidate, a member of the department also? Yes, he was. So the statement that the plaintiff suggests, I guess, is evidence of motive, is so much in a vacuum that it says nothing. But the real underlying issue is not motive here. It's whether there was a constitutional violation, number one, and number two, whether there was a violation of a clearly established constitutional right. Those were the decisions made by the district court in granting the judgment NOV. And the choice between delay or not delay is arguably neither choice is a good one. You could commence the investigation immediately during the course of the political campaign and be accused of using that as retaliation and likely impair the independence of the investigation itself, or you could delay the investigation, stay quiet about the issue, and then conduct an investigation outside the heat of a campaign. And that's what was done. And the choice between those two alternatives, one is not clearly a constitutional violation, while the other is not a constitutional violation. Neither one is a constitutional violation. One is clearly not and the other is not. Which one is clearly not? Neither one is clearly a violation of the Constitution. Let me ask you about the other charge, the other count. When someone's transferred right after an election and the question is what's the motive, isn't motivation generally a proper question for a jury to determine? Not under the evidence we had in this case, because what was presented to Judge Bryan in the summary judgment process and at trial was evidence of budgetary reasons, business necessity, and the qualifications of Mr. Quance for the position. And those reasons were presented as evidence of a nonretaliatory basis for this decision. In response to that the jury required to believe that? This issue didn't go to the jury. The jury never heard any of that. The jury heard the evidence, but at the close of the plaintiff's case in chief, Captain Dan Kimball, against whom that charge was made, or that claim was made, was dismissed. So the jury didn't decide that issue. They heard the evidence up to that point, but it was never presented to them. So what we did was we proved that there was a nonretaliatory reason for the assignment to the sexual offender registration. Especially whether there was a fact and dispute for the jury to decide. What happened, though, Your Honor, is that although the plaintiff had alluded in the summary judgment process to the existence of evidence that this was a pretext, there was no such evidence presented at the trial. And Judge Bryan recognized that. But the trial didn't come out at the trial. He ran for election. He lost. And counsel said it was within the next month that he was transferred. Not under the McDonnell Douglas standards that apply to a situation like this. Yes, there are inferences that benefit the plaintiff. But when there is then evidence presented by the defense of a nonretaliatory reason for the decision, then the plaintiff has to come back with evidence that that was a pretext. And there they failed. Well, the evidence can be the time that he's transferred right after he challenged the sheriff, and the next thing that happened is he's transferred. That raises an inference of pretext. And then someone comes in and says, no, that's not why I did it. My motive was because he was the best qualified man for the job. That's part of the evidence. Yes. That could be the reason. That could be motivation. Or maybe that was not the real reason he did it. Motivation is a question that a jury has to decide. Well, if this had been presented to the jury, they would have been speculating, because all they had was. Well, how else do you know what somebody's motivation is other than looking at the facts and deciding what you believe? Because when you presume. You're a witness. You either believe him or you don't. You're not required to believe him. You hear what happened, that it happened right after the person challenged the sheriff, and that the one who testified or the one who made the decision is a strong supporter of the sheriff. And that raises an inference. A jury can either believe that or believe the witness who says, no, that's not why I did it. I did it because he was the best man for the job. But under the McDonnell-Douglas formulation, that when the defense presents evidence that this was a decision that was made for non-retaliatory reasons, then they have to have evidence of pretext. And they didn't have that. And there was more than simply that he was qualified for the job. They waited until after the Board of County Commissioners had made their budgetary decisions for 2003, the upcoming year. And one of the reasons for that was they were hoping that they would approve additional deputies that would allow a different shift of employees. When the commissioners did not approve additional deputies for the sheriff's office, then the focus on who was best qualified for the transfer to the sexual offender's position focused on Mr. Quance because of his past qualifications and because he had a nonsupervisory rank and because he was not in a specialty position. In other words, he wouldn't be taken out of a specialized type of investigatory unit. That's a good set of facts and a good argument that might well persuade a jury. The question is whether it should be decided by a jury. And, you know, it's all those things might very well persuade the jurors that that was the motive. It's all of those things plus the fact that the plaintiff did not present any evidence of pretext. And that's a McDonnell Douglas requirement which was not fulfilled here by the plaintiff. So Judge Bryan correctly recognized that the situation was different than what had been represented at the summary judgment. Well, his pretext was you fired me, you moved me because I campaigned against you. No, the evidence under McDonnell Douglas has to be more specific about the reasons given for the transfer. And the reasons given were these things about budgetary, qualification,  Those reasons were unrefined. I don't know why the plaintiff still can't point to the fact that the timing is enough. Simply because under McDonnell Douglas. The case is pretty strong about timing. Simply because under McDonnell Douglas, proximity doesn't trump the evidence. I'm not saying it trumps. I'm not saying it trumps. We're talking about getting the case, should the case have gone to the jury. Correct. For the jury to decide the question rather than the court deciding it as a matter of law. What he said is no reasonable jury could ever make a finding in your favor. Essentially he applied the summary judgment standard. Yes, correct. And he did so after recognizing at the summary judgment level that the evidence was incredibly thin in support of the plaintiff. But he gave him the inferences based on the suggestion that there would be evidence of pretext which never materialized at trial. So there was an absence of necessary evidence. And Judge Bryan correctly ruled that that issue should not go to the jury. On the issue of Modi, we think that that's an additional ground for affirming the district court's decision, although the district court didn't decide that in the judgment NOV. The judgment NOV was granted on the basis of no constitutional violation shown by delay. And then secondly, on qualified immunity, which that is what raises the issue of was this a clearly established constitutional right. In other words, did Mr. Quance have a clearly established right not to have his investigation delayed? And on that ground, that's even a stronger basis for upholding the decision on the judgment NOV. On the other issue that was raised against Mr. Kimball, the equal protection claim, again, that was a situation where the plaintiff made a claim and Judge Bryan gave him every benefit of inferences on the summary judgment process. But when it got to trial, there was simply no evidence that he was treated differently than any other deputy sheriff would be treated regarding making statements to the news media. He was told, and there was a policy that said, in this paramilitary organization, you cannot go to the news media and complain about your job. And that applied to everyone. Quance was not singled out on that issue. And so the Court correctly dismissed Captain Dan Kimball on that issue at the close of the plaintiff's case. All in all, this is a case where, like I said at the beginning, the evidence was virtually nonexistent or it was incompetent when it was attempted to be presented. And Judge Bryan, after a very small verdict was returned in favor of the plaintiff, correctly decided that there was not evidence of a constitutional violation and that there was also qualified immunity, and so correctly granted judgment to NOV. I think I've said my piece on this. I would refer the Court to our brief. I believe we covered every issue with citations to the record, unlike the brief of the appellant. I read the brief. Everything is adequately covered in the brief. Thank you, counsel. Thank you very much. Mr. Reed, there isn't any dispute that the sheriff had the right to reassign Mr. Quance to that SOR if he wanted to. The question is whether he did it in retaliation. Correct. But he had the absolute right to make that assignment. Yes. The question with regard to the reassignment is the motivation. And that's the issue that the Court disallowed the plaintiff to put before the jury. And in the motions for motions in limine, the Court disallowed the me-too arguments of the three other deputies who were part of this whole process. There were three other deputies, Steve Brigham, Ed Thompson, and Marty Gunderson, who were also set to testify that they, too, were subjected to internal investigations. And the Court basically narrowed down the issues. And at the time that the plaintiff was ready to put forth his evidence, there were no witnesses that were going to be allowed to testify. The county should have been in this case for two reasons. One, because Sheriff Edwards was the final policymaker, and it was Sheriff Edwards that was responsible for delaying the investigation and consistent with Davis v. Mason County. Secondly, the county had been aware of the problems with regard to retaliation of deputies when running against the incumbent sheriff, and that was brought up by the sheriff himself when he first ran for office and the incumbent sheriff assigned him to duties away from the office and away from the county so that he didn't have an opportunity to campaign. Well, you did better than he did then. This didn't happen until after the election. That's an improvement. That's because of the retaliation that the sheriff instituted against Mr. Quons. What evidence of pretext was there? The evidence of pretext with regard to motivation for the reassignment was that the other witnesses who were set to testify were also reassigned, or they were denied opportunities to go into different departments within the sheriff's office. You mean after they ran for election? Yes. Ed Thompson ran for election, and then Marty Gunderson and Steve Brigham were supporters of Ed Thompson and or Glenn Quons. And after the election, they all were reassigned? During the course of the election and after the election. And you say that evidence was excluded? Yes. Now, did you appeal that ruling on the evidence? Yes. And it's in our argument with regard to the motions eliminating. And is it in your briefs to us? I'm sorry? In your briefs to us? Yes. Okay. Okay, continue. It's important to point out that Mr. Quons was not disciplined after the investigation took place. Also, in this case, if the jury was confused based on the objections, then there needs to be a new trial. The plaintiff had a right, a constitutional right to a jury. And so, therefore, Kimball should not have been dismissed. Either Kimball should not have been dismissed or the plaintiff should have had the right to have that issue decided by the jury. Our argument with regard to the delay was that the delay was motivated by bad intent. It was the delay itself that caused the public to conclude that the plaintiff had done something wrong in his application. The delay benefited the sheriff, and it was the jury's responsibility to decide what was the motive for delaying it. With regard to the reassignment, like we said, the plaintiff was not allowed to put on evidence of pretext And one piece of information with regard to the motivation of Captain Kimball is that Captain Kimball is now the sheriff, and he had the support of Sheriff Edwards during the course of the election of 2008. Sheriff Edwards finally retired? Yes, finally. With regard to the reassignment, no one else was even asked whether they would be interested in the SOR assignment. The only person considered for that was Glenn Quantz, and it was done a year after the defendants knew that they needed to have someone in that position. Thank you, Your Honor. Thank you, counsel. Thank you both. Case just argued will be submitted. Court will take a brief recess for the morning. Be back in about 10 to 15 minutes.
judges: Reinhardt, Paez, Strom